UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY HILTUNEN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CASE NO. 2:14-cv-13315

HON. MARIANNE O. BATTANI

_____/

**OPINION AND ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS
AND ADOPTING THE REPORT AND RECOMMENDATION**

**I.**    **INTRODUCTION**

Before the Court are the Plaintiff's objections to Magistrate Judge David R. Grand's June 23, 2015, Report and Recommendation ("R&R"). (Doc. 21.) In the R&R (Doc. 20), the Magistrate Judge recommended that the Court grant Defendant's motion for summary judgment (Doc. 19) and deny Plaintiff's motion for summary judgment (Doc. 18). For the reasons that follow, the Court **OVERRULES** the Plaintiff's objections and **ADOPTS** the R&R.

**II.**    **STATEMENT OF FACTS**

As the parties have not objected to the R&R's recitation of the facts, the Court adopts that portion of the R&R. (See Doc. 20, pp. 3-6.)

**III.**    **STANDARD OF REVIEW**

    **A.**  **Objections to a Magistrate Judge's R&R**

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge.  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the objection requirement."  Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006).  Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general."  Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

## B. Standard of Review Applicable to Social Security Cases

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

**IV. DISCUSSION**

**A. Objections to the Weight Assigned to Treating Physician's Opinions**

Plaintiff first objects to the lack of weight afforded to the various opinions rendered by her treating physician, Floyd Stevens, D.O. In November 2011, Dr. Stevens opined that Plaintiff would be unable to ambulate or stand for a prolonged period of time, lift heavy objects, or reach. (Tr. 509). He emphasized the unpredictable and recurrent nature of Plaintiff's Crohn's disease flare-ups and predicted that Plaintiff would be incapacitated due to exacerbations approximately two and a half days per month. (Id. at 510). In July 2012, Dr. Stevens provided another opinion stating that Plaintiff would be limited to lifting and carrying less than ten pounds for no more than one-third of an eight-hour workday; standing and walking for less than two hours in an eight-hour workday and requiring an assistive device; and sitting with the ability to alternate her posture. (Id. at 438). He further stated that Plaintiff's limitations would disrupt her job schedule "3/4 of total time." (Id.).

The Administrative Law Judge ("ALJ") afforded Dr. Stevens' November 2011 opinion limited probative weight due to the "lack of significant findings during the consultative examination and the claimant's lack of treatment for Crohn's disease." (Id. at 19). The Magistrate Judge affirmed that these two factors supported the ALJ's determination. Further, the Magistrate Judge noted that Plaintiff's ability to sustain work at Substantial Gainful Activity ("SGA") levels through December 2011 was inconsistent with Dr. Stevens' opinion. Plaintiff disputes the Magistrate Judge's reliance on her ability to work at SGA levels and argues that the record reflects numerous absences from work that were permitted pursuant to the Family Medical Leave Act ("FMLA"). In fact, Plaintiff asserts that her employment was terminated precisely because of these

4

excessive absences.  Accordingly, given the allowances of the FMLA, the fact that Plaintiff was able to work at SGA levels is not inconsistent with Dr. Stevens' opinion.

As discussed in the Magistrate Judge's opinion, there can be no question that Plaintiff engaged in SGA between the alleged onset date of January 1, 2008, and the time she was terminated from employment on December 19, 2011.  (Doc. 20, p. 8). Plaintiff is therefore ineligible to receive disability benefits for this period.  See 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").  Accordingly, the only period at issue relevant to this case is from December 19, 2011, onward.

Plaintiff specifically challenges the ALJ's reliance on her work activity as evidence that she was physically capable of performing work when, in reality, she was on FMLA leave for some of that time.  Indeed, the Court agrees that Plaintiff was frequently absent from work.  In 2008, the record reflects that she missed several days of work in January.  (Tr. 459-60).  In 2009, Plaintiff was absent for two to three days in February and early June.  (Tr. 454, 468).  Shortly thereafter, she requested approximately one month of FMLA leave between June 21, 2009, and July 16, 2009. (Tr. 469.)  In this request, Dr. Stevens noted that Plaintiff could expect to suffer from flare-ups of her Crohn's disease once every six months for five to ten days.  (Id.)  The record reflects no further FMLA requests or doctor recommendations that Plaintiff be excused from work until July 15, 2010, when Plaintiff requested FMLA leave until November 11, 2010.  (Tr. 481, 493). Interestingly, a CT scan of Plaintiff's abdomen taken on September 19, 2010, during the leave period, indicated no bowel obstruction,

thickening, or inflammation. (Tr. 401). However, on October 20, 2010, Plaintiff was hospitalized for her gastrointestinal difficulties. On November 12, 2010, Dr. Stevens indicated that Plaintiff could return to work with no restrictions. (Tr. 498). Between November 2010 and December 2011, the date of Plaintiff's employment termination, there is no evidence in the record that Plaintiff took any further leave time, at least under medical advisement. In fact, more recent visits to Dr. Stevens indicated that she felt better since not working, that her gastrointestinal issues had improved, and that she had minimal abdominal tenderness. (Tr. 513). Other than stating at one visit that she experienced nausea and cramping frequently (Tr. 514), Plaintiff did not complain about her Crohn's disease during the remainder of her visits in 2012. (Tr. 515-19). Therefore, although Plaintiff's point that the FMLA may have protected her employment from being terminated sooner is well-taken, the evidence provided is insufficient to support the conclusion that she was unable to work between December 2011 and the present time.

      The ALJ also gave Dr. Steven's July 2012 opinion little weight, explaining that it was inconsistent with the medical evidence on record, including the consultative examiner's ("CE") report; Plaintiff's own testimony; Plaintiff's ability to engage in SGA; and Dr. Stevens' November 2010 statement authorizing Plaintiff to return to work without restrictions. (Tr. 19). The Magistrate Judge agreed that these conclusions were supported by the record. Plaintiff argues that: (i) the November 2010 return to work certification was not inconsistent with Dr. Stevens' July 2012 opinion; (ii) because Crohn's disease is intermittent, the lack of significant findings by the CE does not lead to the conclusion that Plaintiff is not disabled; and (iii) the CE's observation concerning Plaintiff's weight is not inconsistent with Crohn's disease.

In light of the above discussion, the ALJ's determination that Dr. Stevens' July 2012 opinion was inconsistent with the record – namely, with his own treatment notes – is supported by substantial evidence.  Nonetheless, the Court will address Plaintiff's arguments.  First, the Court agrees with Plaintiff that Dr. Stevens' November 2010 work authorization is not necessarily inconsistent with his July 2012 opinion.  Merely because Plaintiff's Crohn's exacerbation ended does not undermine Dr. Steven's global assessment of her abilities when she is afflicted with a flare-up.  However, this conclusion does not overcome the substantial evidence supporting the ALJ's determination.  Second regarding Plaintiff's assertion that her symptoms were "quiescent" during the CE examination, it would appear that Plaintiff's symptomatology had been improved for some time, consistent with the above discussion.  Moreover, the CE appeared to be skeptical of the severity of Plaintiff's Crohn's symptoms, stating, "Amazingly despite this problem she does weigh 317 pounds," and reiterating, "It is striking that she has been able to maintain such severe obesity."  (Tr. 428, 431).  It is no stretch to infer from this language – and it is indeed suggested by Plaintiff (Doc. 21, p. 4) – that Plaintiff's weight is unusual for a patient suffering from Crohn's disease.  Accordingly, the CE report, along with the substantial evidence of record, supports the ALJ's decision to afford Dr. Stevens' opinions little weight.

**B. Objections to the Weight Assigned to "Off-Work" Slips**

Plaintiff's next objection concerns the ALJ's decision to afford "little weight" to her physicians' statements holding her off work.  The ALJ granted little weight to these off-work slips because they were intended to be only temporary restrictions and because Plaintiff returned to work after these notes were issued.  (Tr. 20).  The Magistrate Judge

7

agreed with the ALJ's conclusions.  Similar to her arguments advanced above, Plaintiff contends that a "temporary restriction" is not the same as a temporary condition and that Plaintiff's frequent absences from work would have prevented her from sustaining employment without the protections of FMLA.  As discussed above, Plaintiff's multiple absences from work may have been indicative of disability during certain periods of 2009 and 2010.  However, during that time, Plaintiff was engaged in SGA and therefore is ineligible for disability benefits.  See 20 C.F.R. § 404.1520(b).  Further, Plaintiff has produced no evidence that she was restricted from working, per a doctor's recommendation, for the period between mid-November 2010 and December 2011.  Accordingly, the ALJ's conclusion to afford the off-work slips only little weight is supported by substantial evidence.

### C. Objections to the Weight Assigned to Psychological Consultative Examiner's Opinion and the Global Assessment of Functioning Scores

The ALJ noted the fact that Plaintiff had been issued multiple global assessment of functioning ("GAF") scores of 50, indicating serious symptoms or serious limitations in functioning.  (Tr. 20).  However, the ALJ afforded these GAF scores little weight because they are highly subjective and do not indicate whether the score is intended to assess symptom severity or limitations in functioning.  (Id.).  The Magistrate Judge agreed with the ALJ's conclusions, reasoning that an ALJ need not consider GAF scores as opinion evidence in accordance with Administrative Message 13066 (AM-13066") where the ALJ's decision was rendered prior to the promulgation of AM-13066 on July 22, 2013.  See Bryce v. Comm'r of Soc. Sec., No. 12-CV-14618, 2014 WL 1328277 at *9 (E.D. Mich. Mar. 28, 2014).  Further, a GAF score, standing alone, need not be afforded much weight "[u]nless the clinician clearly explains the reasons behind

his or her GAF rating, and the period to which the rating applies." Id. (citing Nienaber v. Colvin, No. 13-1216, 2014 WL 910203 at *4 (W.D. Wash. Mar. 7, 2014)).

The Plaintiff appears to imply that the present case may be distinguished from Bryce because the ALJ rendered her opinion on April 18, 2013. Like the decision in Bryce, however, the ALJ's decision here was written before the promulgation of AM-13066 on July 22, 2013. Moreover, the GAF scores of 50 are inconsistent with the medical sources' qualitative observations. For example, Plaintiff's treating psychiatrist opined that Plaintiff's grooming and hygiene were good; that she had an open, cooperative, and engaging interpersonal style; that she exhibited coherent speech and logical thought process; and that although she had a depressed and anxious affect, her judgment and eye contact were good. (Tr. 540). The report goes on to describe Plaintiff's self-reported symptoms, including feelings of panic and anxiety when in public, difficulty concentrating, considerable stress, and psychosomatic symptoms such as dizziness and sweating. (Id.). The treating source's GAF score does not explain whether it is based on Plaintiff's subjective, self-reported statements or on her own clinical observations. Indeed, her own objective findings would appear inconsistent with a GAF score of 50. Because self-reports are insufficient to support a finding of disability, the Court concludes that the ALJ's determination was supported by substantial evidence. See Bell v. Barnhart,148 F. App'x 277, 285 (6th Cir. 2005) ("There is no indication that Dr. McFadden's opinion was supported by anything other than Bell's self-reports of his symptoms. Such reports alone cannot support a finding of impairment.") (citing 20 C.F.R. § 404.1508; Young v. Sec'y of HHS, 925 F.2d 146, 151 (6th Cir. 1990)).

9

Likewise, CE Michael Brady, Ph.D., assigned Plaintiff a GAF score of 50, explaining that:

> Her ability to understand, recall, and complete tasks and expectations does not appear to be significantly impaired. Her ability to maintain concentration was impaired. As a result of her emotional state she may often be distracted and her effectiveness and performance will likely be limited and slowed. Her ability to withstand the normal stressors associated with a workplace setting is somewhat impaired.

(Tr. 425). Plaintiff argues that the ALJ erred in discounting Dr. Brady's assessment and GAF score. As noted by the ALJ, a GAF score of 50 is inconsistent with aspects of Dr. Brady's report, to the extent that Plaintiff stated that she cares for her home and children, cooks, maintains close relationships with her family members, and demonstrated an intact memory. (Tr. 423-24). The ALJ also correctly observed that a GAF score of 50 is also inconsistent with Plaintiff's lack of mental health treatment during the bulk of her alleged disability, given that she only began seeking counseling in August 2012. (See Tr. 534-55). Further, state agency medical reviewer Judy Strait, Psy.D., L.P., took Dr. Brady's opinion into consideration when she rendered her own residual functional capacity assessment, which the ALJ adopted. (See Tr. 69-70, 75-76). Accordingly, the Court finds that the ALJ's determinations regarding Plaintiff's GAF scores and Dr. Brady's assessment are supported by substantial evidence.

## V.     CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Date:   September 17, 2015          s/Marianne O. Battani
                                    MARIANNE O. BATTANI
                                    United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 17, 2015.

                                    s/ Kay Doaks
                                    Case Manager